698 P.2d 1295

**John KENYON, III, dba K & K Construction Company, Plaintiff-Appellant,**

v.

**KARBER CONSTRUCTION COMPANY, INC., an Arizona corporation, Defendant-Appellee.**

**No. 1 CA–CIV 6960.**

Court of Appeals of Arizona, Division 1, Department B.

March 19, 1985.

Ronald W. Meyer, Phoenix, for plaintiff-appellant.

Robert D. Rosanelli, Phoenix, for defendant-appellee.

## OPINION

KLEINSCHMIDT, Judge.

The appellant, John Kenyon, III, dba K & K Construction Company, sued the defendant-appellee, Karber Construction Company, to recover money allegedly due Kenyon pursuant to a subcontract between the two parties. Karber had originally contracted with the Navajo Housing Authority to build what was referred to as six "demonstration units" located on three separate sites on the Navajo Reservation. The exact nature of the structures is unclear but they fall within the classification of residential housing. The subcontract called for Kenyon to perform the stucco work. Kenyon did not have an Arizona contractor's license. He informed Karber that he was not licensed but that if necessary, he would associate a licensed person to perform the work in question. Karber advised Kenyon that a license was not necessary for this project. The project manual which sets forth the requirements for the contractors and subcontractors specified only that the contractors and subcontractors be approved by the Navajo Housing Authority. There was no reference in the project manual to any requirement for a contractor's license.

The trial court granted Karber's motion for summary judgment on the ground that Kenyon was not a licensed contractor and therefore could not, pursuant to the provisions of A.R.S. § 32–1153, bring a suit to recover for construction work that he had performed. Kenyon raises three issues but we need only decide one of them: That is, whether the statute that precludes an unlicensed contractor from maintaining an action to recover for work performed applies to contracts for work performed on the Navajo Reservation on a project for the Navajo Housing Authority. We reverse the order of the trial court granting summary judgment in Karber's favor, find that as a matter of law Kenyon is entitled to

maintain the action, and remand the case to the superior court for a trial on the merits.

The case which governs this issue is *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). There, the Supreme Court of the United States held that the State of Arizona could not impose motor carrier license and use fuel taxes on a non-Indian contractor who was engaged in hauling logs for a tribal lumber operation. The Court observed that when on-reservation conduct involving only Indians is at issue, state law generally does not apply. It went on to note that when the state seeks to assert authority over the conduct of non-Indians engaging in activity on the Reservation, there must be a particularized inquiry into the nature of the state, federal, and tribal interests at stake to determine whether, in the specific context, the exercise of state authority would unduly impinge upon some federal purpose.

In *Bracker* the record was replete with federal statutes and regulations dealing with the federal government's daily supervision of the entire tribal timber industry. The Court concluded that the federal regulatory scheme was so pervasive as to preclude any additional burden sought to be imposed by the state. It found that there was no room for imposition of a state tax because the assessment of such a tax would threaten the overriding federal objective of guarantying that the Indians profit to the greatest extent possible from their timber resources. The Court found that the tax would undermine the ability of the Secretary of the Interior to make determinations with respect to the harvesting and sale of timber because it was necessary for the Secretary, in reviewing or writing the terms of contracts, to be able to predict and determine the proper allocation of all business expenses, including fuel costs.

■ Although neither this court nor the trial court were presented with arguments based upon specific federal regulations, the origin, purpose, and nature of the Navajo Housing Authority and its relationship with the federal government are readily apparent from existing source material. The record, together with an inspection of the Navajo Tribal Code and the Code of Federal Regulations, is sufficient for us to determine, as a matter of law, that tribal and federal interests and regulations preempt the field and preclude the imposition of any state imposed regulation relating to who may contract to construct housing for the Navajo Housing Authority.

■ The Navajo Housing Authority is an entity established pursuant to the Navajo Tribal Code. *See* 6 N.T.C. §§ 601 *et seq.* The purpose of the housing authority is to alleviate the shortage of adequate low income residential dwellings on the reservation and to take all steps necessary to make the benefits of federal housing laws available to the Navajo Tribe. *See* 6 N.T.C. § 604 and historical note to § 602. The housing authority is empowered to encumber its property for loans received from the federal government, 6 N.T.C. § 616(b)(3), and the approval of the Secretary of the Interior is required with respect to any financial assistance contract entered into between the federal government and the housing authority. 6 N.T.C. § 625.

Under the provisions of 42 U.S.C. §§ 1437 *et seq.* the U.S. Department of Housing and Urban Development (HUD) provides financial and technical assistance to Indian housing authorities for the development and operation of low income housing projects. *See* 24 C.F.R. § 805.101. Such projects are subject to federal environmental policies, wage regulations, and all of the policies of the Department of Housing and Urban Affairs. 24 C.F.R. § 805.107. Preferences for training and employment in connection with housing authority projects are to be given to Indians. 24 C.F.R. § 805.106(a). The housing authority is to select, with HUD's approval, the best construction proposals received, taking into consideration price, design, the developer's experience and other evidence of the developer's ability to complete the project. 24 C.F.R. § 805.203(b). To the greatest extent possible, contracts are to

be awarded to Indian organizations and Indian-owned economic enterprises. 24 C.F.R. § 805.204. Other regulations which pertain to the housing authority deal with interagency and tribal cooperation, 24 C.F.R. § 805.208, loan arrangements, 24 C.F.R. § 805.209, site selection, 24 C.F.R. § 805.216, and inspection of construction, 24 C.F.R. § 805.221. Of particular importance to the present case are the provisions of 24 C.F.R. § 805.214, which specify the housing authority shall complete development of each project at the lowest possible cost. Finally, for all that appears from the record, the Arizona Registrar of Contractors has never purported to exercise authority over any residential construction on Indian reservations.

■ We think it quite clear that if the state required licensing of all subcontractors who contract to perform work on the reservation on jobs in which the Navajo Housing Authority is the owner of the project, that regulation would interfere with the housing authority's attempt to secure work at the lowest possible cost and might interfere with its policy of according preferences to Indians.

■ We note the argument that the legislature was not, in adopting A.R.S. § 32–1153, regulating conduct on the reservation but was merely exercising its power to limit the jurisdiction of the superior court. First, we cannot say whether or not the legislature ever intended the statute to apply in a case like this. Second, assuming that it did, we will not presume that had the legislature foreseen the effect of the preemption doctrine it would have chosen to close the state courts to persons in the appellant's position. Thus, under the attendant circumstances, the provisions of A.R.S. § 32–1153 do not preclude an unlicensed subcontractor from maintaining an action in state court for work performed on the Navajo Reservation.

The judgment of the trial court is vacated and set aside and this case is remanded for further proceedings. In our discretion, we grant attorneys' fees and costs incurred on appeal upon submission of proper documentation to this court.

GREER and CONTRERAS, JJ., concur.